Clark Law and Associates, LLC
Jina Clark, Formerly Jennie Clark OSB No. 000319
E-mail: *jina@clarklawportland.com*
Jonathan R. Russell, OSB No. 220641
*jonny@clarklawportland.com*
6501 SW Macadam Ave. Suite E
Portland, OR   97239
(503) 238-1010
(503) 238-1212 (facsimile)
Of Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **SANTIAGO A. KENT** <br><br> Plaintiff, <br><br> v. <br><br> **WASHINGTON COUNTY,** a government entity; **ROBERT CARAWAY,** in his individual capacity; **DAVID McPHERSON,** in his individual capacity. <br><br> Defendants. | **Case No.:** <br><br> **COMPLAINT** <br><br> 1. Americans with Disabilities Act – Titles II and III; 42 U.S.C. § 12181 et seq. <br><br> 2. Or. Rev. Stat. §§ 659A.142 et. seq. <br><br> 3. First Amendment Retaliation – 42 U.S.C. § 1983 <br><br> 4. Fourth Amendment Unreasonable Seizure – 42 U.S.C. §1983 <br><br> 5. Supervisory Liability – 42 U.S.C. § 1983 <br><br> 6. Fourteenth Amendment Selective Enforcement – 42 U.S.C. § 1983 <br><br> 7. Negligence <br><br> 8. Municipal Liability (Monell) – 42 U.S.C. § 1983 <br><br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Santiago Kent, through Clark Law & Associates, LLC, brings this Complaint against

Defendant and alleges as follows:

**Complaint** 1 of 14

## NATURE OF THE ACTION

1.      This is an action for damages, including This is an action for damages, including compensatory damages, equitable relief, including injunctive and declaratory relief, and attorney fees and costs, to redress violations of Title III of the Americans with Disabilities Act (42 U.S.C. § 12181 et seq.), a pendant state claim under Or. Rev. Stat. § 659A.142; as well as claims brought against government entities and their employed officers acting under color of law for violations to civil rights protected by the U.S. Constitution and state and federal law.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction of the federal claim contained in this Complaint pursuant to 42 U.S.C 1983. 42 U.S.C. § 12182(a)(B)(C) and 28 U.S.C. §§ 1331 and 1345 U.S.C. § 794). The court has supplemental Jurisdiction over the state tort claims pursuant to 28 U.S. Code § 1367(a).  The Court may grant declaratory and other relief pursuant to 28 U.S.C. §§ 2201 and 2202.  Jurisdiction is proper in this Court because at all times material to this Complaint, Plaintiff was a resident of the Portland Division of the District of Oregon.  Venue is proper in this Judicial District pursuant to 28 U.S. C. § 1391 (b) because the claim arose in this Judicial District.

## PARTIES

3.      **Plaintiff Santiago Kent ("Plaintiff" or "Mr. Kent")** is a 57-year-old man. Plaintiff is 5'10" and weighs approximately 240 pounds.  At all times relevant, Plaintiff was a resident of Woodburn, Marion County, Oregon.

4.      Plaintiff is a qualified individual with a disability.  Plaintiff suffers from an above-knee amputation with osseointegration.  For amputees like Plaintiff, osseointegration involves implanting a metal anchor directly into the bone of an amputated limb.  A prosthesis is then attached to the metal extension, known as an abutment.  Osseointegration is a remarkable technique; however, it has some associated risks. One of the most notable risks post-procedures is Periprosthetic Fracture, which results from a fracture in the remaining bone from a post-procedure fall.  Abutment Breakage occurs when the part connecting the prosthesis to the implant bends or breaks under certain conditions. Aseptic Loosening results from the implant becoming detached from the bone and is a potential complication.

5.      Plaintiff faces limitations on physical activities in participating in high-impact sports or activities due to the implant; and therefore, utilizes two service and assistance dogs to assist him with mobility issues to prevent any severe falls and injury to his femur.

6.      Plaintiff is a Navy veteran and retired law enforcement sergeant who suffered a significant injury to his right leg while on duty.   The significant injury led to years of medical treatments and 13 surgical procedures, ultimately resulting in the amputation of his right leg. Extensive rehabilitation was needed to use a prosthetic leg.

7.      Plaintiff experiences ongoing leg pain, which necessitates the use of forearm crutches or a wheelchair for mobility at times.  Plaintiff manages nerve pain, blood pressure, and diabetes with prescription medication that must be taken at specific times throughout the day.

8.      Plaintiff also presents with posttraumatic stress disorder (PTSD) and exhibits severe symptoms, including hypervigilance, and panic attacks resulting in physiological responses such as shortness of breath, chest constriction, elevated heart rate, and difficulty in sustaining concentration.

9.      Additionally, Plaintiff experiences challenges with sleep, heightened irritability, and physiological reactions when recalling or discussing interactions with law enforcement personnel.

10.      Plaintiff is the owner of two service dogs: Kylo Blue Kent and Nala Amani Kent. Plaintiff's service dogs assist Plaintiff with symptoms associated with his disabilities.  Plaintiff is unable to have his service dogs leashed because of the risks involved with having his service dogs leashed with a physical leash due to his specific disability.  Plaintiff has been advised by his primary treating physician to avoid using leashes when being assisted by his service dogs due to risk of injury from fall hazards posed by use of the leash.

11.      <u>Kylo Blue Kent</u> is a 3.5-year-old Great Dane Canine.  Kylo Kent has been owner-trained to be a lifeline, helping to navigate various terrains, retrieve items, open doors, and even assist with mobility after a fall.  In addition, Kylo has helped mitigate Plaintiff's posttraumatic disorder with deep pressure therapy.  The training for preparing a dog for such tasks is extensive and tailored to the individual's needs, ensuring a harmonious relationship between the dog and the owner. (**Training a service dog is a meticulous and time-sensitive task.  Great Danes, with their gentle nature and imposing size, can be excellent companions; however, their shorter lifespan necessitates careful planning for their succession.)

12.    <u>Nala Amani Kent</u> is a 7-month-old Belgian Malinois Canine.  As a Belgian Malinois, Nala is known for her intelligence and versatility, making her a suitable candidate for service work.

13.    Belgian Malinois are known for their quick learning and problem-solving skills. Their intelligence enables them to understand commands and tasks swiftly, making them excellent working dogs. Their ability to grasp new concepts and adapt to different situations enhances their effectiveness in these roles.

14.    Training at a young age, as Nala did, allows for a solid foundation to be built.  Her ability to assist with navigating stairs, operating push-button doors and retrieving items indicates her advanced training and potential to assume the responsibilities of her predecessor, Kylo, fully.

15.    The transition from one service dog to another is critical.  The cost of a service dog can range from $15,000 to $30,000 or more upfront, in addition to at least $500 annually for food and veterinary care.  Service dogs' extensive training, specialized skills, and ongoing care contribute to their high cost.  Thus, many people decide to train service doges themselves.

16.    **Defendant County of Washington (Washington County Sheriff's Office)** is a governmental Organization operating in the Portland Division of the District of Oregon. Defendants Robert Caraway and David McPherson are Sheriff Deputies employed by the Washington County Sheriff's Office.

17.    **Robert Caraway**: Washington County Sheriff's Deputy.  Department of Public Safety Standards and Training Identification Number # 57838

18.    **David McPherson**: Washington County Sheriff's Sergeant. Department of Public Safety Standards and Training Identification Number # 39728.


## PRELIMINARY FACTUAL ALLEGATIONS

19.    The Tualatin Hills Park and Recreation District's website states the following:

Tualatin Hills Park and Recreation District is committed to providing all citizens with the opportunity to participate in the public process, programs, services, and activities. We commit to doing this with parks and facilities that are accessible to all patrons and visitors. We fully support and strive to maintain compliance with the Americans with Disabilities Act and encourage patrons to let us know when conditions are non-compliant or otherwise unsatisfactory.

20.    With respect to service animals, Tualatin Hills Park and Recreation District's website specifically states:

Under the Americans with Disabilities Act (ADA), service animals are allowed in all THPRD-owned parks and facilities. A service animal is a dog that has been individually trained to perform tasks or do work for the benefit of a person with a disability. Please note: a service animal can be excluded from a public accommodation if it poses a direct threat to health and safety (example, if your dog is aggressively barking and snapping at other customers). An animal may also be excluded if it is not housebroken, or if it is out of control and you are unable or unwilling to effectively control it.

21.     Mountain View Champions Park has a webpage on Tualatin Hills Park and Recreation District's stating:

Mountain View Champions Park is a 21.5-acre community park located in Aloha, adjacent to Mountain View Middle School. The park is unique as it was designed to be fully accessible to people experiencing disability. There are many special design features such as wider pathways, no steps, especially designed playground equipment, and the first synthetic sports field in Oregon designed for athletes of all abilities.

22.     Mr. Kent does not leash his service dogs due to the nature of his disability (and upon the advice of his doctor).  Having the service dogs leashed poses the danger to getting entangled in Mr. Kent's prosthetic leg and causing Mr. Kent to fall causing further injury.  Mr. Kent's prosthetic leg is less responsive and not as stable as a natural leg.  Additionally, a leash would hinder the service animals' safe and effective performance of their tasks, such as retrieving items or assisting Mr. Kent to get back up on his feet if he falls.

23.     At all times and occurrences herein, the service animals were effectively under Mr. Kent's control through voice commands, whistles, hand signals and/or use of electronic collars.  At no time or occurrence have Mr. Kent's dogs been accused of causing damage of any kind.

24.     Mr. Kent has two dogs—as one dog is always in training due to the short lifespan of dogs in relation to the time needed to train a new service dog.  Per his treating physician's medical advice, Mr. Kent requires flat surfaces to train his dogs, as potholes and uneven surfaces pose increased risk while he ambulates using his prosthetic leg.

**FACTUAL ALLEGATIONS**

25.     On October 20, 2023, Mr. Kent was visiting Mountain View Champions Park with his service and assistance dogs.  Officer Hunt contacted Mr. Kent and demanded that Mr. Kent

leash his dogs.  Mr. Kent informed Officer Hunt that his dogs were service dogs and assured him that the dogs were under control and wouldn't approach anyone.

26.     Despite Mr. Kent's assertions, Officer Hunt indicated that if Mr. Kent did not comply, he would be charged with criminal trespass.

27.     Officer Hunt contacted the Washington County Sheriff's Office to have Plaintiff escorted off the property.  Deputy Robert Caraway of the Washington County Sheriff's Office responded to the location where Mr. Kent was present with his service dogs and approached Mr. Kent.  Deputy Caraway indicated he was wearing a body camera.

28.     The deputies admitted that the park operated by Tualatin Hills Park and Recreation District was open to the public but stated that the park had rules.  Mr. Kent informed the officers that the Americans with Disabilities Act (and federal regulations such as 28 CFR 36.302) trumped local park rules or state statutes.  Mr. Kent, again, reiterated legal exposure to the officers and the district if he was forced to leave.  Mr. Kent explained why his dogs needed to be off leash.  Deputy McPherson expressed appreciation for the exemplary behavior of Mr. Kent's service dogs.  Deputy McPherson suggested that the Tualatin Hills Park and Recreation District might consider granting individual exceptions, citing Mr. Kent as a strong candidate due to the exceptional training of his dogs.

29.     Mr. Kent sought clarification from Sergeant McPherson regarding potential consequences of his refusal to leave. Specifically, Mr. Kent inquired whether his noncompliance would result in arrest, to which Sergeant McPherson nodded and confirmed that this was a possibility. Moreover, when asked the same question, Sergeant McPherson evasively responded with, "I think you got what you want."  Mr. Kent interpreted this response as an implicit threat of criminal action in the event of noncompliance, prompting his decision to vacate the premises under the apprehension of potential arrest.  Mr. Kent left after the officers provided him with a case number for their police report.

## TORT CLAIM NOTICE

**30.**     Timely Tort Claim Notice under ORS 30.275.  Plaintiff submitted proper tort notice under ORS 30.275 to the Washington County Sheriff's Office on November 17th, 2023, via Attorney Geordie Duckler.   On January 22, 2024, Denise Calentine, Senior Risk Management Analyst, on behalf of Washington County, acknowledged this tort claim notice.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (Americans with Disabilities Act—Titles II and III: 42 U.S.C. § 12181 et seq.)

### (Against All Defendants)

31.    Plaintiff re-alleges all relevant paragraphs as though fully set forth herein.

32.    Mountain View Champions Park is a place of public accommodation as that term is defined in 42 U.S.C. § 12181(7)(F).

33.    Plaintiff is a qualified individual with a disability as that term is defined in § 12131(2).

34.    At all relevant times, Defendants were aware of Plaintiff's disabilities.

35.    Defendants discriminated against plaintiff for being disabled and for being accompanied by a service animal in violation of 42 U.S.C. § 12132 and its accompanying regulations.

36.    Plaintiff is entitled to injunctive relief, including, but not limited to, an order mandating full compliance with Titles II and III of the ADA.

37.    Pursuant to 42 U.S.C. §§ 1988 and 2000e-5, Plaintiff is entitled to an award of attorney's fees, expert witness fees, and costs incurred.

### SECOND CLAIM FOR RELIEF

### (Or. Rev. Stat. §§ 659A.142 and 659A.143)

### (Against All Defendants)

38.    Plaintiff re-alleges all relevant paragraphs as though fully set forth herein.

39.    Mountain View Champions Park is a "place of public accommodation" as that term is defined in Or. Rev. Stat. §§ 659A.142 and 659A.143.

40.    Plaintiff is a "disabled person" as defined at Or. Rev. Stat. § 659A.104(1).

41.    At all relevant times, Defendants were aware of Plaintiff's disabilities.

42.    Defendants discriminated against plaintiff for being disabled and for being accompanied by a service animal in violation of Or. Rev. Stat. §§ 659A.142 and 659A.143.

43.    Plaintiff is entitled to injunctive relief, including, but not limited to, an order mandating full compliance with Or. Rev. Stat. §§ 659A.142 and 659A.143.

44.    Plaintiff is entitled to a declaration that Defendants violated Or. Rev. Stat. §§ 659A.142 and 659A.143.

45.     Plaintiff is entitled to noneconomic damages in an amount to be determined by jury at the time of trial.

46.     Pursuant to Or. Rev. Stat. §§ 659A.885 and 20.107, Plaintiff is entitled to an award of attorney's fees and costs and disbursements.

## THIRD CLAIM FOR RELIEF

### First Amendment Retaliation—42 U.S.C. § 1983

### (Against All Individual Defendants)

47.     Plaintiff re-alleges all relevant paragraphs as though fully set forth herein.

48.      Plaintiff engaged in constitutionally protected activity.

49.     As a result of engaging in constitutionally protected activity, Plaintiff was subjected to adverse action by the individual defendants that would chill a person of ordinary firmness from continuing to engage in the protected activity.

50.     There was a substantial causal relationship between the constitutionally protected activity and the adverse action.

51.     Plaintiff is entitled to noneconomic damages in an amount to be determined by jury at the time of trial.

52.     All individual defendants actions were malicious, oppressive or in reckless disregard of Plaintiff's rights; and therefore, Plaintiff seeks punitive damages.

53.     Pursuant to 42 U.S.C. §§ 1988, Plaintiff is entitled to an award of attorney's fees, expert witness fees, and costs incurred.

## FOURTH CLAIM FOR RELIEF

### Fourth Amendment Unreasonable Seizure – 42 U.S.C. § 1983

### (Against All Individual Defendants)

54.     Plaintiff re-alleges all relevant paragraphs as though fully set forth herein.

55.     Plaintiff was unlawfully seized by the individual defendant officers for exercising his civil rights.

56.     The defendant officers acted intentionally.

57.     The seizure was unreasonable.

58.     The individual defendants restrained Plaintiff's liberty through coercion and a show of authority.

59.     Plaintiff's liberty was restrained because, under all of the circumstances, a reasonable person would not have felt free to ignore the presence and threats of the law enforcement officers and to go about his business.

60.     The individual defendants' words and actions conveyed to Plaintiff (a reasonable person) that he was being ordered to restrict his movements with respect to the park.

61.     As a result of the coercive threats, intimidation, and show of authority, Plaintiff involuntarily complied with the individual officers' orders and submitted to the show of authority.

62.     There was a substantial causal relationship between Plaintiff's protected activity and the adverse action.

63.     Plaintiff is entitled to noneconomic damages in an amount to be determined by jury at the time of trial.

64.     All individual defendants actions were malicious, oppressive or in reckless disregard of Plaintiff's rights; and therefore, Plaintiff seeks punitive damages.

65.     Pursuant to 42 U.S.C. §§ 1988, Plaintiff is entitled to an award of attorney's fees, expert witness fees, and costs incurred.


## FIFTH CLAIM FOR RELIEF

### Supervisory Liability – 42 U.S.C. § 1983

### (Against Defendant David McPherson)

66.     Plaintiff re-alleges all relevant paragraphs as though fully set forth herein.

67.     The supervisory defendant acted under color of state law.

68.     The acts and failure(s) to act of the supervisory defendant's subordinate(s) deprived Plaintiff of particular rights under the laws of the United States and the United States Constitution.

69.     The supervisory defendant directed his subordinate in the acts and failures to act that deprived Plaintiff of these rights.

70.     The supervisory defendant set in motion a series of acts by his subordinate, or knowingly refused to terminate a series of acts by  his subordinate, that the supervisor knew or reasonably should have known would cause the subordinates to deprive Plaintiff of these rights.

71.    The supervisory defendant knew that the subordinate was engaging in these acts and knew or reasonably should have known that the subordinate's conduct would deprive Plaintiff of these rights.

72.    The supervisory defendant failed to act to prevent the subordinate from engaging in such conduct.

73.    The supervisory defendant disregarded the known or obvious consequence that a particular training deficiency or omission would cause his subordinates to violate Plaintiff's constitutional rights.

74.    That deficiency or omission actually caused the subordinates to deprive Plaintiff of Plaintiff's constitutional rights.

75.    The supervisory defendant engaged in conduct that showed a reckless or callous indifference to the deprivation by the subordinate of the rights of others.

76.    The supervisory defendant's conduct was so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

77.    Plaintiff is entitled to noneconomic damages in an amount to be determined by jury at the time of trial.

78.    All defendant's actions were malicious, oppressive or in reckless disregard of Plaintiff's rights; and therefore, Plaintiff seeks punitive damages.

79.    Pursuant to 42 U.S.C. §§ 1988, Plaintiff is entitled to an award of attorney's fees, expert witness fees, and costs incurred.


**SIXTH CLAIM FOR RELIEF**

**Fourteenth Amendment (Selective Enforcement)—42 U.S.C. § 1983**

**(Against All Individual Defendants)**

80.    Plaintiff re-alleges all relevant paragraphs as though fully set forth herein.

81.    The defendants' conduct had a discriminatory effect on Plaintiff; namely, Plaintiff was denied his civil rights as a disabled person.

82.    The defendants were motivated by a discriminatory purpose—to wit, to discriminate against Plaintiff based on his disability and his exercising of his rights as a disabled individual protected by state and federal law.

83.    Similarly situated individuals who were not disabled (and did not exercise rights allocated to individuals with disabilities by federal and state law) were not subject to the offensive conduct.

84.     Defendants' conduct actually caused Plaintiff to be denied his civil rights.

85.     Plaintiff is entitled to noneconomic damages in an amount to be determined by jury at the time of trial.

86.     All individual defendants' actions were malicious, oppressive or in reckless disregard of Plaintiff's rights; and therefore, Plaintiff seeks punitive damages.

87.     Pursuant to 42 U.S.C. §§ 1988, Plaintiff is entitled to an award of attorney's fees, expert witness fees, and costs incurred.


### SEVENTH CLAIM FOR RELIEF

### Negligence

### (Against All Defendants)

88.     Plaintiff re-alleges all relevant paragraphs as though fully set forth herein.

89.     All defendants owed Plaintiff a duty of care.

90.     The defendants breached that duty.

91.     The breach of the duty was the cause-in-fact of legally cognizable damage to Plaintiff.

92.     Plaintiff is entitled to noneconomic damages in an amount to be determined by jury at the time of trial.

### EIGHTH CLAIM FOR RELIEF

### Municipal Liability (*Monell*) – 42 U.S.C. § 1983

### (Against Washington County only)

93.     Plaintiff re-alleges all relevant paragraphs as though fully set forth herein.

94.     The acts and failures to act of the individual officers deprived the plaintiff of his particular rights under the laws of the United States and the United States Constitution.

95.     The individual defendants acted under color of state law.

96.     The training policies of Washington County Sheriff's Office were not adequate to prevent violations of law by its employees.

97.     The training policies of Washington County Sheriff's Office were not adequate to train its police officers and employees to handle the usual and recurring situations of a disabled person being assisted by a service animal at a park.  Plaintiff told the individual defendants that they were violating his rights under the ADA and Oregon state law.  Despite the amount of time

the individual defendants had to research this issue and seek training regarding enforcing the rights of disabled individuals with respect to service animals, Washington County Sheriff's Office officers double-downed issued Plaintiff a 180-day ban from the park and threatened him with arrest if he did not comply.

98.    On information and belief, after Plaintiff's exclusion from Mountain View Champions Park, Washington County Sheriff's Office did nothing to train officers regarding the full protections under the ADA and ORS allotted to disabled individuals, like Plaintiff, who rely on service animals for mobility.

99.    Washington County Sheriff's Office neglected to provide adequate training for its officers and supervisors to identify individuals with physical disabilities who rely on service animals and to understand disabled individuals' entitlement to rights Under the Americans with Disabilities Act, Oregon Revised Statute, and the Tualatin Hills District Policies on discrimination.

100.    Washington County Sheriff's Office were deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of law by its officers.

101.     Washington County Sheriff's Office were deliberately indifferent to known or obvious consequences of its failure to train its police officers adequately as to public accommodations sought by disabled individuals with service animals.

102.    The failure of Washington County Sheriff's Office to prevent violations of law by its employees and to provide adequate training caused the deprivation of Plaintiff's rights by the individual officers; that is, the defendant's failure to prevent violations of law by its employees and to train played a substantial part in bringing about or actually causing the injury or damage to Plaintiff.

103.    Washington County has neglected to provide adequate training for its officers and supervisors to identify individuals with physical disabilities who rely on service animals, and to comprehend their rights as stipulated by the Americans with Disabilities Act, Oregon Revised Statute, and the Washington County Sheriff's Office Policies on discrimination.

104.    As "Washington County Sheriff Sergeant," Defendant McPherson and Caraway's actions indicated a prioritization of Washington County Sheriff's Office policies over the Americans with Disabilities Act. This was evidenced by the removal of a protected patron and his service animals, implying a disregard for the protection offered by the Americans with Disabilities Act.

105.    Washington County Sheriff's Office, Sergeant McPherson, and Deputy Caraway failed to receive training on consulting with an Americans with Disabilities Act Coordinator or a member of the legal department before enforcing an illegal trespass.

106.    The failure of the City of Washington County to provide training to Defendants McPherson and Caraway led to actions that indicated a prioritization of the policies of the City of Washington County over those delineated in the Americans with Dis-abilities Act, Oregon Revised Statute, and Tualatin Hills Parks and Recreation District policies and procedures.

107.    In failing to properly train Defendants McPherson and Caraway on seeking legal counsel from the City of Washington County Legal Department or Americans with Disability Coordinator before endorsing Officer Hunt's discriminatory actions.

108.    Washington County Sheriff's Office's official policy or widespread or longstanding practice or custom caused the deprivation of Plaintiff's rights by the individual defendants; that is, Washington County Sheriff's Office's official policy or widespread or longstanding practice or custom is so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

109.    Plaintiff is entitled to noneconomic damages in an amount to be determined by jury at the time of trial.

110.    Pursuant to 42 U.S.C. §§ 1988, Plaintiff is entitled to an award of attorney's fees, expert witness fees, and costs incurred.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant the following relief:

   A.   Declare that the discriminatory actions, practices, and policies of the Washington County Sheriff Department, individually Robert Caraway, David McPherson., as set forth above, violate Title II, Title III of the ADA, 42 U.S.C. §§ 12181 - 12189, and its implementing regulation, 28 C.F.R. pt. 36;

   B.   Enjoin the Washington County Sheriff Department., its officers, agents, and employees, and all other persons in active concert or participation with Defendant, from discriminating on the basis of disability against Mr. Kent, other individuals with disabilities, and individuals related to or associated with an individual with a disability in violation of Title II, Title III of the

ADA, 42 U.S.C. §§ 12181 - 12189, and its implementing regulation, 28 C.F.R. pt. 36;

C.   Enjoin the Washington County Sheriff Department, its officers, agents, and employees, and all other persons in active concert or participation with Defendant from failing or refusing to adopt and implement a policy of nondiscrimination against persons with disabilities, including persons who use service animals, and from failing or refusing to make reasonable modifications to policies, practices, and procedures to ensure that goods, services, facilities, privileges, advantages, and accommodations are afforded to individuals with disabilities, including those who use service animals, in a non-discriminatory manner;

D.   Award non-economic monetary damages and punitive damages in the amount the Court finds justly, fairly, and reasonably to compensate Plaintiff for his harms and losses.

E.   Assess a civil penalty against the Washington County Sheriff Department, individually, Robert Caraway, David McPherson as authorized by 42 U.S.C. § 12188(2)(A)(C) and 28 C.F.R. § 36.504(a)(3) in an amount sufficient to vindicate the public interest.

F.   An award for statutory attorney's fees, expert witness fees, and costs incurred.

G.   Order such other appropriate relief as the interests of justice may require in the opinion of this Honorable Court.

Signed and dated this 15th day of October 2024.

Respectfully submitted

/s/ Jina Clark, Esq.
Jina Clark, OSB No. 000319
(Formerly Jennie Clark)
Clark Law and Associates, LLC
6501 SW Macadam Ave. Suite E
Portland, OR   97239